Joe Rolando **GARZA** and Southwestern Bell Telephone Company, Appellants,

v.

Juanita V. **SERRATO** and Floresvinda Gutierrez, Appellees.

No. 04–84–00156–CV.

Court of Appeals of Texas, San Antonio.

Sept. 30, 1985.

Rehearing Denied Oct. 24, 1985.

Hubert W. Green, San Antonio, Jeremiah I. Rhodes, Eagle Pass, for appellants.

W. Burl Brock, Catherine M. Stone, Watkins, Mireles, Brock & Barrientos, San Antonio, for appellees.

Before CADENA, C.J., and CANTU and TIJERINA, JJ.

## OPINION

CANTU, Justice.

Juanita V. Serrato and Floresvinda Gutierrez, appellees, brought suit against Joe Rolando Garza and Southwestern Bell Telephone Company, appellants, for personal injuries sustained by Serrato and Gutierrez when the automobile they occupied was involved in a collision with a van owned by Southwestern Bell Telephone Company and which was being driven by its employee Garza.

Trial was to the court without benefit of a jury. Judgment was entered against appellants holding both jointly and severally liable in the aggregate amount of $2,791,089.00. Appeal is from this judgment.

The suit was originally filed on March 7, 1983. The petition alleged that both appellees sustained blows to their bodies and shock to their entire nervous system as a result of being rear-ended by a telephone company vehicle driven by Garza.

On July 19, 1983, the trial court, by letter, notified the parties that the instant case, along with some sixty other cases was set for trial on Monday, August 15, 1983, at Eagle Pass.

On Friday, July 29, 1983, appellants' attorneys were served with notice that a video deposition of Dr. Luis Gonzalez Rios was to be taken at an address in Piedras Negras, Mexico, on August 10, 1983.

On August 5, 1983, appellants filed their *Motion To Quash Notice of Deposition and For Protective Order.* In their motion, appellants complained of among other

things, the scheduled video deposition to be taken in Mexico. Specifically, appellants expressed concern that a deposition to be taken outside the Texas courts' jurisdiction would deprive them of the protection afforded by law and court orders available under the rules of procedure, such as compulsory process as well as the subpoena powers of the court.

Additionally appellants complained that a deposition taken within five days of the scheduled trial date would not permit them sufficient time to review the testimony of the witness and prepare rebuttal testimony. Appellants sought an order requiring appellees to conduct the deposition at a place within the jurisdiction of the court and at a time to permit the obtaining of meaningful rebuttal evidence.

The trial court denied all the relief sought by appellants by overruling their motion without benefit of a hearing on August 9, 1983.

Counsel for appellants did not attend the video deposition hearing. A written transcription of the hearing was filed with the district clerk in Eagle Pass on Friday, August 12, 1983, at 4:40 p.m.

The record shows that the videotape deposition was taken by appellees' counsel on August 10, 1983, before Christine Barnes-Austin, a certified shorthand reporter and notary public in and for the State of Texas in the offices of Luis Gonzalez Rios, M.D., Avenue E, Carranza 1017, Piedras Negras, Coahuila, Mexico, between the hours of 10:30 o'clock a.m. and 11:45 o'clock a.m., Mexico time, and 11:30 o'clock a.m. and 12:45 o'clock p.m., U.S. time, pursuant to the notice of July 29, 1983.

The certificate of the court reporter attached to the deposition reduced to writing clearly indicates that Dr. Rios' testimony was taken following an oath administered by Barnes-Austin as a notary public in and for the State of Texas.

The deposition reduced to writing was filed with the clerk of the court without the signature of the witness subscribed thereto and bearing the notation "signature waived."

On appeal appellants present numerous contentions including factual and legal sufficiency challenges to the evidence supporting the judgment. Inasmuch as we sustain other points of error requiring a remand for retrial we do not reach all of the contentions.

Appellants' first two points of error contend:

The trial court erred in overruling defendants' motion to quash notice of deposition of Dr. Luis Gonzalez Rios.
and
The videotape testimony of Dr. Luis Gonzalez Rios, taken in Mexico, is incompetent as a deposition and the trial court erred in admitting it into evidence over defendants' objections.

Before commencement of trial, appellants renewed the objection to the Rios deposition previously made through their motion to quash deposition and for protective order.

Instead of entertaining the objections, the trial court ordered appellants to file written objections to the deposition *after* the close of the evidence in the form of a "bill of particulars."

The videotape testimony of Dr. Rios was presented in evidence over objection and constitutes the only expert medical testimony offered by appellees. Dr. Rios offered his opinion that each appellee had sustained a double-disc herniation of the spine. He further described the injuries, the medical expenses and the disability each appellee could anticipate from the injuries.

Appellants, in accordance with the court's direction, filed their "bill of particulars" on August 26, 1983.

The "bill of particulars" echoed the same concerns previously evidenced in appellants' motion to quash deposition.

Before rendition of judgment appellants filed their alternative motion for mistrial and their motion to strike testimony of expert witnesses once again renewing the same objections to the admission of the

deposition of Dr. Rios. All motions attacking the deposition of Dr. Rios were overruled by the court.

■ It is well settled that the taking of testimony by deposition is a departure from the common law rules of evidence and that the right to so take a deposition depends entirely upon statutory provisions therefor. Thus, the rule in Texas is that the right to take the deposition of a witness depends entirely on the statutes, and the provisions of the statutes must be strictly complied with. *Ex parte Stiles*, 136 Tex. 211, 150 S.W.2d 234 (1941).

Statutory authority for the taking of depositions has undergone a series of changes in the last fifty or so years.

Prior to 1971, the Rules of Civil Procedure and their predecessor statutes provided for the taking of depositions through the issuance of commissions. *See* TEX.R. CIV.P. 193, 194, 202, 203 (1970) (repealed effective January 1, 1971). *See also* TEX. REV.CIV.STAT.ANN. arts. 3744 et seq. (Vernon 1926) (repealed, Acts 1939, 46th Leg., p. 201).

Article 3746 (Vernon Supp.1984) enumerates the officers authorized to execute the commissions in the state, outside the state and outside the bounds of the nation. Article 3746 has never been specifically repealed; however, the commission practice was generally repealed effective January 1, 1971, as evident by repeal of Rules 193, 194, 202, 203. *See also Civil Procedure Rules Amended*, 33 TEX.B.J. 703 (1970).

On August 10, 1983, at the time of Dr. Rios' deposition, there existed no rule which expressly granted authority to take a foreign deposition either by notice or commission.[1]

If it be argued that unrepealed article 3746 remained authority for the taking of Dr. Rios' deposition, it is noted that no commission was ever issued to do so. We, nonetheless, reject any notion that article 3746 remained authority to continue the commission practice.

■ Even if a commission had been procured for the taking of Dr. Rios' deposition, under article 3746 the court reporter utilized would not have had statutory authority to do so.

Article 3746 in pertinent part provides:

The commission shall be addressed to the following officers, either of whom may execute and return same.

\* \* \* \* \* \*

3. If the witness is alleged to reside or be without the United States, to any notary public or any minister, commissioner or charge d'affairs of the United States resident in, and accreditd to, the country where the deposition may be taken, or any consul-general, consul, vice-consul, commercial agent, vice-commercial agent, deputy consul or consular agent of the United States resident in such country.

\* \* \* \* \* \*

■ Christine Barnes-Austin, the certified shorthand reporter and notary public in and for the State of Texas, is not a notary public who is a resident in the country where the deposition was taken. Nor is Barnes-Austin any of the other officers listed under article 3746. Thus Barnes-Austin was conferred no statutory authority to take depositions or administer oaths in a foreign jurisdiction. *Cf. Kumpe v. Gee*, 187 S.W.2d 932, 935 (Tex.Civ.App.—Amarillo 1945, no writ) which construed identical language contained in TEX.REV. CIV.STAT.ANN. art. 26 authorizing the administration of oaths outside the United States. The court, stated:

In our opinion, the requirement of our statute that such officials be resident in the country where the affidavit is taken is mandatory and that unless they are resident in such country they are not

---

**1.** On December 5, 1983, the Supreme Court by order added Rule 188 effective April 1, 1984, providing for depositions in foreign jurisdictions. Under the new rule a deposition on notice must be "before a person authorized to administer oaths in the place in which the examination is held...." Rule 188, subd. 1.

authorized to administer oaths or take affidavits for use in our courts.

*See also Ward v. Valand,* 135 S.W.2d 770 (Tex.Civ.App.—El Paso 1939, writ dism'd, judgment cor.).

Another valid comparison may be made with TEX.REV.CIV.STAT.ANN. art. 6602, subd. 3(c) (Vernon 1969) conferring authority upon notary publics before whom the acknowledgment or proof of an instrument may be made without the physical limits of the United States and its territories.

Barnes-Austin's authority to act as a notary draws its impetus from TEX.REV. CIV.STAT.ANN. art. 5949 (Vernon Supp. 1985) which provides for appointment, number and terms as well as jurisdiction. Under the statute jurisdiction is well defined as being coextensive with the boundaries of the State, irrespective of the county in which he is appointed. Article 5949, subd. 1 (Vernon Supp.1985).[2]

The same is true about Barnes-Austin's authority to take depositions as an official shorthand reporter. TEX.REV.CIV.STAT. ANN. art. 2324a (Vernon 1971) which spelled out the powers of official district court reporters clearly limited the exercise of power to the county within the judicial district to which the reporter is appointed.

Article 2324b (Vernon Supp.1985) effective September 1, 1983, clearly provides that a certified shorthand reporter may administer oaths to witnesses only within the state. *See* § 16.

All of the above statutes reflect a consistent legislative policy that a Texas shorthand reporter and notary public will have no authority to perform his duties except within the boundaries of the State of Texas.

As further evidence that the policy above noted is to be adhered to, Rule 188, added by order of December 5, 1983, and effective April 1, 1984, provides in pertinent part.

Whenever the deposition, written or oral, of any person is to be taken in a sister state or a foreign country, or in any other jurisdiction, foreign or domestic for use in this state, such deposition may be taken (1) on notice before a person authorized to administer oaths in the place in which the examination is held, either by the law thereof or by the law of the State of Texas....

The Act then goes on to provide for other methods of accomplishing the same, none of which would have applied to the deposition before us.

■ Dr. Rios' deposition was taken by videotape pursuant to the provisions of Rule 215c. The rule provides in pertinent part:

Any party may cause the testimony and other available evidence at a deposition to be recorded by non-stenographic means, which term shall specifically include videotape recordings, without leave of court, and such non-stenographic recording may be presented at trial in lieu of reading from the written record of the deposition, subject to the following rules:

\* \* \* \* \* \*

e. The non-stenographic recording shall not dispense with the requirement of a written record of the deposition unless the court shall so order on motion and notice before the deposition is taken, and such order shall also make such provision concerning the manner of taking, preserving and filing the non-stenographic recording as may be necessary to assure that the recorded testimony will be intelligible, accurate and trustworthy....

(Repealed by order of December 5, 1983, effective April 1, 1984, see now Rule 202).

No order dispensing with the requirement of a written record of the disposition was sought nor obtained. Thus appellees

---

**2.** Prior to amendment in 1980, a notary's appointment was limited to the county of his residence and his authority to act was confined to the county in which such appointment was

made. *Loden v. Carothers,* 85 S.W.2d 291 (Tex. Civ.App.—Texarkana 1935, no writ); *Daugherty v. McCalmont,* 41 S.W.2d 139 (Tex.Civ.App.— Fort Worth 1931, no writ).

were required to file and did file a written transcript prepared by the court reporter.

The written deposition was, however, not signed by the witness Dr. Rios as required by former Rule 209 which provides that the deposition shall be signed by the witness unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign.

Instead of raising one of the foregoing excuses, the court reporter certified only that the signature was waived by the witness.

Appellants argue that this excuse is insufficient as a matter of law thus rendering the deposition incompetent and inadmissible as evidence. We need not, however, reach this question because we are convinced that the deposition itself was taken without authority of law and thus the manner and form of its taking become immaterial.

■ Appellees argue in response that the trial court was justified in permitting the deposition to be taken at Dr. Rios' office because it was merely a few blocks from the Maverick County Courthouse. Whether Dr. Rios' office was merely a few blocks from the county court does not appear of record. What is clearly evident is that Dr. Rios' office was separated from the county courthouse by an international border and all the concomitant jurisdictional problems associated therewith.

■ Appellees further argue that Rule 212 prevents appellants from complaining on appeal about the trial court's failure to quash the deposition because appellants failed to file objections to the deposition before the trial convened.

Rule 212 provided:
When a deposition shall have been filed in the court at least one entire day before the day on which the case is called for trial, no objection to the form thereof, or to the manner of taking the same, shall be heard, unless such objections are in writing and notice thereof is given to the opposite counsel before the trial commences.

(Repealed by order of Dec. 5, 1983, eff. April 1, 1984, see now Rule 207, subd. 3 eff. April 1, 1984).

The record is clear that the written deposition transcribed from the video deposition was not filed with the clerk of the court until Friday, August 12, 1983, at 4:40 p.m. Trial commenced the following Monday, August 15, 1983, at 3:30 o'clock p.m.

Appellees thus argue that the written deposition of Dr. Rios was on file for more than one day prior to trial.[3]

Even if we conclude that appellees are correct that the written deposition was on file for an entire day before trial date and that appellants are foreclosed from objecting to the form or manner of taking the deposition by Rule 212, we are not convinced by argument advanced or by the rule that appellants were precluded from timely challenging the authority of the court reporter to take the deposition in the Republic of Mexico.

We observe a distinct difference between "form or manner of taking" and authority to take in the first place.

We find it unnecessary to address the other contentions raised by appellants because a retrial will unlikely result in the same complaints arising once again. We do feel it incumbent to briefly touch on appellants' complaint of the trial court's refusal to grant a continuance because discovery will necessarily be repeated and the problem that arose could conceivably repeat itself.

■ On August 12, 1983, the Friday before trial, appellants filed their first motion for continuance seeking a delay because counsel for appellant Southwestern Bell was unavoidably tied up due to an ongoing nationwide strike of telephone workers. The motion also asked for delay because of

---

3. At oral argument counsel for appellees candidly admitted that the filing of the written deposition late on Friday was an intentional tactical ploy to diminish the opposition's opportunities to raise complaints.

inadequate time to prepare rebuttal testimony thought to be needed following Dr. Rios' deposition taken two days before. Other problems plaguing counsel for appellant were also alleged in the motion. On the day of trial the motion for continuance was overruled.

After trial but before judgment was rendered appellants filed their *Alternative Motion for Continuance and to Reopen Evidence in the Case* repeating the original grounds for continuance and seeking to postpone judgment in order to obtain evidence in rebuttal to Dr. Rios' testimony. The motion was overruled on October 12, 1983.

Rule 251 authorizes a continuance upon "sufficient cause supported by affidavit." TEX.R.CIV.P. 251.

Ordinarily the granting or denial of a motion for continuance is a matter resting within the sound discretion of the trial court. *Hernandez v. Heldenfels*, 374 S.W.2d 196 (Tex.1963). The exercise of sound discretion, however, is always subject to review, and when a first motion substantially complies with the rules, there is no presumption that the court did not abuse its discretion and it must be shown from the record that the exercise of discretion was justified. *Piedmont Fire Insurance Co. v. Dunlap*, 193 S.W.2d 853, 856 (Tex.Civ.App.—Galveston 1946, writ ref'd n.r.e.).

If the motion is verified and uncontroverted, the factual allegations must be accepted as true. *Piedmont Fire Insurance Co. v. Dunlap, supra*, 193 S.W.2d at 856.

In passing upon the question of whether the trial court has abused its discretion, we will examine the entire record. *Texas Employers Insurance Association v. Yother*, 306 S.W.2d 730 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.).

Dr. Rios was the treating physician for both appellees. On the basis of examinations in 1981 and tests performed in June 1983, Dr. Rios diagnosed a neck sprain for appellee Serrato and a lumbosacral sprain for appellee Gutierrez.

On August 1, 1983, just prior to the deposition taken on August 10th, Dr. Rios had myelogram tests performed in Mexico on both patients. These x-rays caused Dr. Rios to change his opinion and at deposition to claim for the first time that plaintiffs each suffered from herniated discs.

The new position assumed by Dr. Rios could not have become apparent to appellants until receipt of a copy of the written deposition on August 13, 1983, two days prior to trial.

Appellants contend that it was grossly unfair to permit the use of this untimely deposition which for the first time revealed the medical claims upon which the large awards of damages are based because it deprived them of the opportunity to respond to the testimony. We agree. Because of the overruling of the motion for continuance, appellants had no effective means to secure a medical witness and to prepare a rebuttal to these new claims over the weekend.

The motion contained what we consider other good sufficient cause alleged; all of which was uncontroverted. The trial court did not have the discretion to reject uncontroverted facts established by affidavit. *Piedmont Fire Insurance Co. v. Dunlap, supra*, 193 S.W.2d at 856.

We hold that the trial court erred in overruling appellants' first motion for continuance and in so doing abused its discretion.

For the foregoing reasons the judgment of the trial court is reversed and the cause is remanded.

TIJERINA, Justice, dissenting.

I respectfully dissent.

Initially appellants complain of the court's denial of the motion to quash notice of deposition of Dr. Luis Gonzalez Rios and for a protective order in connection therewith. They further contend that the video tape testimony of Dr. Luis Gonzalez Rios was incompetent and erroneously admitted in evidence, over objection, and that Dr.

Rios' opinion testimony constituted inadmissible hearsay.

TEX.R.CIV.P. 215c (Vernon 1976) provides:

Rule 215c.   Non-Stenographic Recording

Any party may cause the testimony and other available evidence at a deposition to be recorded by non-stenographic means, which term shall specifically include videotape recordings, without leave of court, and such non-stenographic recording may be presented at trial in lieu of reading from the written record of the deposition, subject to the following rules:

a.   Any party intending to cause such non-stenographic recording shall give five days' notice to all other parties by Certified Mail, Return Receipt Requested, and shall specify in said notice the type of non-stenographic recording which will be used.

b.   The expense of a non-stenographic recording shall not be taxed as costs, unless before the deposition is taken, the parties so agree, or the court so orders on motion and notice.

c.   *Any party shall have reasonable access to the original recording, and may obtain a duplicate copy at his own expense.*

d.   After such notice is given, any party may make a motion for relief under Rule 186b, and the court shall make such orders as are permitted under such rule, if the court finds that justice requires an order to be made.   However, if a hearing is not obtained prior to the taking of the deposition, the non-stenographic recording shall be made subject to the court's ruling at a later time.

e.   The non-stenographic recording shall not dispense with the requirement of a written record of the deposition unless the court shall so order on motion and notice before the deposition is taken, and such order shall also make such provision concerning the manner of taking, preserving and filing the non-stenographic recording as may be necessary to assure that the recorded testimony will be intelligible, accurate and trustworthy.

Such order shall not prevent any party from having a written record made at his own expense.   In the event of an appeal, the non-stenographic recording shall be reduced to writing.   [Emphasis added.]

There is nothing to indicate appellants requested a copy as permitted under Rule 215.

TEX.R.CIV.P. 212 (Vernon 1976) (repealed effective April 1, 1984) provided:

When a deposition shall have been filed in the court at least one entire day before the day on which the case is called for trial, no objections to the form thereof, or to the manner of taking the same, shall be heard, unless such objections are in writing and notice thereof is given to the opposite counsel before the trial commences.

The record before us shows that the deposition was filed at 4:40 p.m. on August 12, 1983, which was a Friday.   Pursuant to TEX.R.CIV.P. 4, Saturdays and Sundays are excluded from the time computation.   Therefore, the deposition was not on file one entire day before the day on which the case was called for trial and appellants were not required to file written objections to the manner and form of taking the deposition.   But, the determination of whether the deposition should or should not be taken is within the sound discretion of the trial court;   before the ruling of the court is set aside, clear abuse of discretion must be shown.   *Meyer v. Tunks,* 360 S.W.2d 518, 522 (Tex.1962);   *Harris County v. Hunt,* 388 S.W.2d 459, 467 (Tex.Civ.App.—Houston 1965, no writ);   *see also* TEX.R.CIV.P. 186b & 215c (Vernon 1974).   TEX.R.CIV.P. 201 (Vernon 1974) provides that the deposition may be taken in the county of the witness's residence, or where he is employed or regularly transacts business in person.   The 1984 amendments to Rule 201 preserved the above quoted provision.   Moreover, TEX.REV.CIV.STAT.ANN. art. 6602(3)(c) authorizes a notary public to take acknowledgments or proof of instruments outside the physical limits of the United States and its territories.   "The law in this regard is now sufficiently broad to permit

a notary public of any nationality, wherever resident, to administer oaths and take affidavits for use in Texas." Bishop, *International Litigation in Texas: Obtaining Evidence in Foreign Countries*, 19 HOUS.L.REV. 361, 391 (1982).

Appellants contend that the deposition was invalidated by the absence of Dr. Rios' signature. Texas courts have held that the failure of the witness to sign the deposition will not affect its admissibility in evidence or justify suppression of the deposition, even when timely motion is made, unless the reasons for not signing impugn the verity or reliability of the deposition. *Bell v. Linehan*, 500 S.W.2d 228, 230 (Tex.Civ.App.—Texarkana 1973, writ ref'd n.r.e.); TEX.R.CIV.P. 209 (Vernon 1974). Thus, appellant has not shown an abuse of discretion by the trial court in denying the motion to quash notice of the deposition and the request for a protective order.

Appellants next assert that the opinion testimony of Dr. Rios that each plaintiff suffered from two herniated discs was inadmissible hearsay because the myelograms were not introduced into evidence. However, it is undisputed that appellants had notice of the time and place for the taking of the deposition at issue. The reason given for appellants' failure to attend the deposition was that their counsel was engaged in strike duties; appellants also stated that they intentionally did not attend the deposition so as not to waive their jurisdictional question. Therefore, appellants had the opportunity to cross-examine the deposed witness but elected not to attend the taking of the deposition. In so doing, they waived the right to object to the admission of such testimony. *Morehouse v. Brink*, 647 S.W.2d 712, 715 (Tex.Civ.App.—Corpus Christi 1982, no writ).

In *Heldt Brothers Trucks v. Silva*, 464 S.W.2d 931, 937 (Tex.Civ.App.—Corpus Christi 1971, no writ), the court stated:

The right to cross-examination of witnesses by a party in a lawsuit is a valuable and substantial right, and it cannot be denied in the instant case but that the circumstances have, in effect, denied that right to appellants in respect to a material matter that has vitally affected them. *They, through no fault of their own, have not been accorded an opportunity to exercise such right, in accordance with the rules* governing cross-examination generally. [Emphasis added.]

Thus, the evidence becomes hearsay and inadmissible only when the adverse party is not accorded an opportunity to cross-examine. Consider *Avila v. United States Fidelity & Guaranty Co.*, 551 S.W.2d 453, 457 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.), cited by appellants, where this court concluded that the trial court erroneously admitted into evidence, over objection, a doctor's testimony pertaining to x-rays which were not admitted in evidence, and stated:

(1) [P]laintiff or his attorney had *no opportunity to properly cross examine the witness because of the absence of such X-rays;* (2) the X-rays were not sufficiently proved up in that there is (a) no positive evidence as to who made the X-rays; (b) that they were taken by a qualified technician or doctor; (c) that they correctly portrayed what they purported to represent; (d) that such X-rays actually portrayed the portion of the body where the injury was involved. [Emphasis added.]

In this case the myelograms were available at the time the deposition was taken and at trial. Appellants were not present at the time the deposition was taken, so we cannot conclude that appellants were not accorded an opportunity to cross-examine. Moreover, the myelograms were taken by Dr. Rios and the radiologist; they actually portrayed the portion of the body where the injury was involved, i.e., the herniated discs; and the myelograms were made and kept in the regular course of business by Dr. Rios. Accordingly, I would overrule points of error 1, 2, 4, 5A and 5B.

Appellants next assail the denial of the motions for continuance. Specifically, the basis for seeking a continuance was to prepare rebuttal testimony to Dr. Rios' deposition, to retain an expert to testify,

and for additional time to locate co-defendant Garza. The first motion for continuance does not even allege the use of due diligence in locating Garza or securing the testimony of expert witnesses. The alternative motion for continuance does contain a statement that defendants have not failed to use due diligence, but does not allege what due diligence, if any, was taken. Neither instrument states what was expected to be proved by the absent witness or testimony.

The decision to grant or deny a motion for continuance because of the absence of a party to the suit, for an inadequate time to prepare for trial, or for inability to obtain the services of an expert witness are matters addressed to the sound discretion of the trial judge. *Gibraltar Savings Association v. Franklin Savings Association*, 617 S.W.2d 322, 327 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.); *Green v. State*, 589 S.W.2d 160, 163 (Tex.Civ.App.—Tyler 1979, no writ); TEX.R.CIV.P. 252. That appellants took appellee Serrato's deposition on June 9, 1983, and knew at that time that Dr. Rios was the treating physician was not disputed; in fact, it was alluded to during the cross-examination of Mrs. Serrato. The foreknowledge of Dr. Rios' involvement for a period of more than two months before trial date is relevant to the question of whether appellants exercised due diligence. Appellants served no interrogatories on Dr. Rios or appellees; their pre-trial discovery was limited to the depositions of the claimants. Appellants' statement that they did not fail to use due diligence is clearly insufficient to satisfy the requirement of Rule 252, *supra*. The motion for continuance must allege that the movant has used due diligence, stating what diligence was used and the cause of failure if known. *Ray v. Ray*, 542 S.W.2d 209, 212 (Tex.Civ.App.—Tyler 1976, no writ).

The lead counsel's preoccupation with the telephone workers' strike does not excuse the failure to conduct pre-trial discovery, to act with due diligence, or to prepare for trial. The record shows that co-counsel took appellee's deposition, and local counsel announced ready for trial. A question is raised concerning the denial of the motion to withdraw as counsel for Garza. The record shows that appellant admitted that Garza at the time of the accident was acting in the course of his employment and in furtherance of Southwestern Bell Telephone Company's business, "on his way to a service call." Thus, there was no conflict of interest between the two co-defendants and the motion to withdraw was properly denied. Moreover, the deposition of Garza was read into the record. The trial court did not err in denying the motions for continuance. I would overrule appellants' third point of error.

In points of error 6, 7, 9, 10 and 12, appellants challenge the sufficiency of the evidence to support the following awards of damages: (1) past and future pain and suffering; (2) past and future mental anguish; (3) loss of earnings and loss of earning capacity; (4) past and future physical impairment; and (5) past and future medical expenses. The amount of the awards are alleged to be excessive. In determining a factual insufficiency of the evidence question we are required to consider and weigh all the evidence in the case and set aside the judgment if we conclude that the judgment is clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In this case there were no findings of fact or conclusions of law requested or filed; consequently, the trial court judgment implies all necessary fact-finding in support of its judgment. *Buchanan v. Byrd*, 519 S.W.2d 841, 842 (Tex.1975). In reviewing the record to determine if there is any evidence supporting the judgment and its implied finding, it is proper to consider only the evidence favorable to the issue and disregard all evidence or inferences to the contrary. *Goodyear Tire & Rubber Co. v. Jefferson Construction Co.*, 565 S.W.2d 916, 918 (Tex.1978). When findings of fact and conclusions of law are not requested or filed, the judgment must be affirmed if it can be upheld on any theory that finds

support in the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977).

Therefore, pursuant to the enunciated standard of review, we consider only the evidence favorable to the judgment and disregard all evidence or inferences to the contrary. The record evidence shows that Mrs. Serrato suffered severe painful and permanent injuries. Conservative treatment was tried following a CAT-scan examination at the Methodist Hospital in San Antonio, but the pain and disability was not alleviated. The myelogram examination indicated that she had a herniated disc in the cervical area. It was stated that she was totally disabled from performing the customary task of a workman and could not do any lifting, bending, stooping or sewing. There is direct evidence that she had pain and suffering since the date of the accident, and in all probability would have pain and suffering in the future. Mrs. Serrato testified that prior to the accident she had been working at two jobs, that she had done all her own house and yard work, and that she had planned to give her children an education. She further testified that since the accident she has been unable to do any work, even household chores, and is unable to support herself and her children. The pain and suffering produced anxiety and mental anguish in the past that will continue in the future. Her future working capacity was said to be significantly affected; therefore, her future earning capacity was impaired. Her past medical expenses were fully proven. Dr. Rios testified that in reasonable medical probability her future medical expenses would be $2,000 to $3,000 a month. At the time of the accident, Mrs. Serrato was a foreman at a sewing factory. Her loss of past wages and future earning capacity were established.

Ms. Gutierrez was employed as a manual laborer, working in the field for her father. She was a passenger in the vehicle driven by Mrs. Serrato at the time of the accident. The evidence established that she suffered severe headaches and pain of the lumbar spine and both sacroiliac joints, and had a marked paravertebral muscle spasm which was described as an objective indication of injury. A CAT-scan examination at the Methodist Hospital in San Antonio gave some indication that the disc was out of place. Conservative treatment followed, but Gutierrez continued to complain of pain. A myelogram examination was performed which showed her to have two herniated discs. There is evidence that she suffered pain since the date of the accident and in all probability will suffer pain in the future; the pain and suffering caused her to have fear and anxiety in the past which will continue in the future. Gutierrez testified that prior to the accident she had done field work for her father and had helped her mother with housework, but that as a result of the accident she is unable to work at all and must depend on her parents for support. This established the mental anguish in the past and in the future. The medical doctor testified that she was totally disabled from performing any labor and that her future working capacity was impaired. The medical and hospital expenses were detailed and it was estimated that in reasonable medical probability her future medical expenses would be at least four thousand dollars per year for the rest of her life. Her past wages were established and the testimony as to future pain and suffering, future mental anguish, future physical impairment, and future medical treatment for the rest of her life indicated a loss of earning capacity.

The prevailing rule in Texas is that past and future physical pain and mental anguish may be implied from the nature of the collision, the injuries and the treatment by the doctors. *Kingham Messenger & Delivery Service, Inc. v. Daniels*, 435 S.W.2d 270, 273 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ); *Austin Road Co. v. Thompson*, 275 S.W.2d 521, 528 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.). Generally, appellate courts have approved recovery for future physical pain, suffering and mental anguish where the evidence shows that there is a reasonable probability of such consequences. *Verhalen v. Nash*, 330 S.W.2d 676, 680 (Tex.Civ.

App.—Texarkana 1959, writ ref'd n.r.e.). This court cannot pass on the credibility of witnesses and weight to be given testimony concerning future pain, suffering and mental anguish. *Kingham Messenger & Delivery Service, Inc. v. Daniels, supra,* at 273. Having reviewed the whole record we conclude that there is sufficient evidence to support the award to both appellees as to past and future pain and suffering, past and future mental anguish, loss of earnings and loss of earning capacity, past and future physical impairment, and past and future medical expenses.

Appellants contend that each and every specific award of damages was grossly excessive. The complainant has the burden of showing that the damages awarded were excessive. *City of Austin v. Selter,* 415 S.W.2d 489, 502 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.). In *Hammond v. Stricklen,* 498 S.W.2d 356, 363 (Tex.Civ. App.—Tyler 1973, writ ref'd n.r.e.), the court reiterated the rule in this regard, stating, viz:

> In determining whether a verdict is 'excessive' the courts must review only that evidence favorable to the award, and the findings of the jury thereon will not be disturbed on ground of 'excessiveness' if there is any evidence to sustain the award; they will not merely interfere and substitute their judgments, nor is it material that the courts might have awarded a lesser sum as fact finders; *there must be some circumstantial indication of bias or prejudice; matters of pain, suffering, and general damages are peculiarly within the discretion of the jury; and in the absence of an affirmative showing of bias or prejudice the courts of civil appeals will give every intendment to the evidence supporting the verdict.* [Emphasis added.]

The trier of fact has large discretion in fixing the amount of the award since personal injury damages are regarded as unliquidated and cannot be measured by any certain standard. *Allied Stores of Texas, Inc. v. McClure,* 622 S.W.2d 618, 619 (Tex.

App.—Tyler 1981, no writ); *Phillips Petroleum Co. v. Burkett,* 337 S.W.2d 856, 859 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n.r.e.). In this case appellants failed to discharge their burden of proof by showing that the award of damages complained of was the result of passion, prejudice or corruption, or that certain evidence was disregarded. Therefore, the award of damages as specified in the trial court judgment is conclusive; I would overrule points of error 6, 7, 9, 10 and 12.

The allegation that the award of damages for past and future mental anguish constitutes a double recovery of the damages for pain and suffering and, further, that the award of damages for past and future physical impairment is in effect a double recovery for the damages of loss of earnings, earning capacity and pain and suffering are raised in points of error 8 and 11. The judgment of the court specified each element of damages based upon the evidence. The dominating diagnosis, as a result of the myelogram examination, was that both Mrs. Serrato and Mrs. Gutierrez suffered herniated discs. It was established that they had suffered pain since the date of the accident, and that, in all probability, they would continue to suffer for the rest of their lives. Mental anguish may be implied from the nature of the injuries accompanied by physical pain, even without direct proof of either existence or cause. *Applebaum v. Michaels,* 384 S.W.2d 148, 152 (Tex.Civ.App.—Texarkana 1964, writ ref'd n.r.e.). This argument of double recovery would require a showing that the trial court did not consider the effects of the injuries separately. There is authority for holding that physical impairment is a separate and distinct element of damages from loss of earning capacity. *Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880, 883 (Tex.1948); *Southwestern Bell Telephone Co. v. Ferris,* 89 S.W.2d 229, 233 (Tex.Civ.App.—Dallas 1935, writ dism'd); *see also Allen v. Whisenhunt,* 603 S.W.2d 242, 244 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd). Thus, the mental anguish, pain and suffering, physical impairment and loss of earnings were

each established by the evidence to produce a separate and distinct substantial loss for which adequate compensation was necessary. I would overrule points of error 8 and 11.

In the final two assignments of error appellants complain of plaintiffs' ex parte communication with the court and urge that the cause should be reversed because of the alleged cumulative trial court errors. The general rule is that where the trial court, in a bench trial, receives inadmissible evidence, there is a presumption that the judgment is founded on the competent testimony in the record and that the trial judge as the fact finder did not consider the incompetent evidence. *Victory v. State,* 158 S.W.2d 760, 765 (Tex.1942); *Casey v. Western Oil & Gas, Inc.,* 611 S.W.2d 676, 680 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.). It is undisputed that this case was called for trial at 9:00 a.m. on August 15, 1983, and that the trial court waited for the appearance of appellants' counsel, who did not arrive until 3:30 p.m. The court within its prerogative could have given due consideration to a default judgment in view of the absence of appellants' counsel, but the court's remarks clearly imply that he would require evidence to prove liability and the damages. There is no evidence in this record to show that the trial judge was influenced by the ex parte communication. Points of error 13 and 14 should be overruled.

I would affirm the judgment of the trial court.