OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS


August 23, 1999

The Honorable Sid L. Harle
Chairman
Court Reporters Certification Board
P.O. Box 13131
Austin, Texas 78711-3131

Opinion No. JC-0096

Re: Whether the Court Reporters Certification Board may disapprove a court reporting firm's application to register with it and related questions (RQ-1118)

Dear Judge Harle:

On behalf of the Court Reporters Certification Board (the "Board"), you request an opinion about the Board's authority as to the registration of court reporting firms and the enforcement against court reporting firms of rules applicable to court reporters. We conclude that the Board has a mandatory duty to accept from court reporting firms correctly filled out applications for registration. The Board has no authority under chapter 52 of the Government Code to impose sanctions against court reporting firms that fail to comply with rules applicable to court reporters.

Government Code chapter 52, subchapter A ("the Act"), establishes the Board and authorizes it to test applicants for certification as court reporters, impose penalties, and revoke or suspend certificates. *Burr v. Shannon*, 593 S.W.2d 677, 678 (Tex. 1980) (discussing article 2324b of the Revised Civil Statutes, the predecessor of chapter 52, Government Code); *see* TEX. GOV'T CODE ANN. § 52.013(a) (Vernon 1998). The Texas Supreme Court appoints the Board and has authority to "adopt rules consistent with this chapter, including rules governing the certification and conduct of official and deputy court reporters and shorthand reporters." TEX. GOV'T CODE ANN. §§ 52.002, 52.011(a) (Vernon 1998); *see* TEXAS RULES OF COURT: STATE: TEX. R. STANDARDS/RULES CERTIFICATION/CERTIFIED SHORTHAND REPORTERS 543 (West 1999) [hereinafter "Standards and Rules"]. Court reporters are certified by the supreme court after the applicants are tested and approved by the Board. TEX. GOV'T CODE ANN. §§ 52.024(a), 52.025 (Vernon 1998). A person may not engage in shorthand reporting unless he or she is certified as a shorthand reporter by the supreme court. *Id.* § 52.021(b).

The Board requests an interpretation of subsections 52.021(h) and (i) of the Government Code, which were adopted by Senate Bill 646 of the 75th Legislature. *See* Act of May 5, 1997, 75th

Leg., R.S., ch. 122, § 1, 1997 Tex. Gen. Laws 233. These provisions, relating to court reporting firms, state as follows:

> (h) A court reporting firm shall register with the board by completing an application in a form adopted by the board.
>
> (i) Rules applicable to a court reporter are also applicable to a court reporting firm. The board may enforce this subsection by assessing a reasonable fee against a court reporting firm.

TEX. GOV'T CODE ANN. § 52.021(h), (i) (Vernon 1998).

You ask five questions. We will address the first four together because they all concern subsection 52.021(h) of the Government Code:

> 1. If a court reporting firm registers with the Board by completing an application in a form adopted by the Board, does the Board have the authority to approve or not approve the application of the court reporting firm, or is the firm merely registering with the Board?
>
> 2. If the Board does have authority to approve or not approve a court reporting firm's application, does the firm have the authority to continue to operate if its application is not approved by the Board?
>
> 3. If the Board has authority to not approve a firm's application, what would be the basis for "not approving" an application? The Board assumes it would be noncompliance with rules promulgated by the Supreme Court of Texas concerning court reporting firms and the requirements therein for registration with the Board.
>
> 4. If a court reporting firm's application is not approved by the Board, must the Board provide an opportunity for a hearing if the court reporting firm can continue to operate without the Board's application approval?

Letter from Sid L. Harle, Chairman, Court Reporters Certification Board, to Honorable Dan Morales, Attorney General (Mar. 24, 1998) (on file with Opinion Committee) [hereinafter "Request Letter"].

Subsection 52.021(h) provides that a court reporting firm "shall register with the board by completing an application in a form adopted by the board." TEX. GOV'T CODE ANN. § 52.021(h) (Vernon 1998). The registration of court reporting firms operates differently from the certification of court reporters, and it also serves a different purpose. There are no requirements for registration of a court reporting firm, aside from completing the application. In contrast, the Act establishes

numerous requirements for certification as a shorthand reporter. *See id.* §§ 52.022 (person seeking certification must file an application for examination, accompanied by a fee); 52.023 (person seeking certification must take and pass examination); 52.024 (Board may refuse to certify to the supreme court an applicant convicted of certain criminal offenses). Court reporting is one of many regulated professions and occupations that may only be practiced by a person licensed by the state, after the person demonstrates the skill, learning, and other qualities necessary to practice in that field. *See Texas State Bd. of Pub. Accountancy v. Fulcher*, 515 S.W.2d 950, 954 (Tex. Civ. App.–Corpus Christi 1974, writ ref'd, n.r.e.). The state may "exact the requisite degree of skill and learning in professions which affect the public, or at least a substantial portion of the public, such as the practice of law, medicine, engineering, dentistry, and many others." *Id.* at 954-55.

We note that some statutes regulating occupations and professions use the term "registration" to mean "license." *See* TEX. GOV'T CODE ANN. § 2001.003(2) (Vernon 1999) (Administrative Procedure Act); *see also* TEX. REV. CIV. STAT. ANN. arts. 3271a, § 2(3) (Vernon Supp. 1999) ("registered engineer" is a licensed engineer); 4522[1] (licensed nurse "shall be styled a 'Registered Nurse'"). In the context of Government Code, chapter 52, however, "registration" is not synonymous with "licensing." Court reporting firms are not forbidden to operate without being registered, nor are they required to demonstrate skills or qualifications to the Board as a condition of registration. The firms are merely to identify themselves to the Board so the Board may enforce the applicable regulations against them and their employees who provide court reporting services. "To register" has been defined as meaning "[t]o enter oneself or have one's name recorded in a list of people (freq. as a legal requirement), as being of a specified category or having a particular eligibility or entitlement." XIII OXFORD ENGLISH DICTIONARY 514 (2d ed. 1989) (definition 2.d.) (examples include to register as unemployed, to register for the draft). In our opinion, "to register" as used in subsection 52.021(h) of the Government Code has this meaning. *See also* TEX. GOV'T CODE ANN. § 305.001 (Vernon 1998) (lobbyists must register with state so that their "identity, expenditures, and activities" may be disclosed publicly).

Accordingly, a court reporting firm does not have to show that it is qualified for registration but only needs to complete an application in a form approved by the Board. The Board has no authority to establish or evaluate qualifications of a court reporting firm. The Board's only express authority with respect to registration—to approve the form of the application—does not allow it to impose substantive qualifications on applicants for registration but merely to elicit enough information to identify reporting firms. While the Board may reject an incomplete application and require the applicant to complete it before accepting it, it must accept an application in the proper form.

---

[1]House Bill 3155 of the 76th Legislative Session, which adopts the Texas Occupations Code, repeals article 4522 of the Revised Civil Statutes and reenacts it without substantive change as section 301.351of the Occupations Code. Act of May 13, 1999, 76th Leg., R.S., H.B. 3155, § 1, sec. 301.351 (to be codified at chapter 301, section 301.351 of the Occupations Code).

In answer to your second and fourth questions, we point out that no remedies or penalties apply to a firm if the Board does not accept its application for registration. A court reporting firm's continued operation is not contingent upon filing a registration form with the Board. A firm may continue to operate even if the Board rejects an application for registration. Because the rejection of the application has no impact on the firm, the Board need not provide the firm an opportunity for a hearing.

Your fifth question is as follows:

> 5. Under subsection (i), is the Board restricted to imposing a fee under this subsection for filing the application or is the Board entitled to apply the sanctions available to it under Chapter 52, Texas Gov't Code, against a court reporting firm that has violated its rules? These sanctions, if available, would include injunctive actions against court reporting firms that fail to register with the Board and disciplinary actions against registrant court reporting firms that violate rules promulgated by the Supreme Court [of Texas] for the Board.

Request Letter at 2.

Subsection 52.021(i) provides that "[r]ules applicable to a court reporter are also applicable to a court reporting firm" and that "[t]he board may enforce this subsection by assessing a reasonable fee against a court reporting firm." TEX. GOV'T CODE ANN. § 52.021(i) (Vernon 1998). The sanctions available to the Board under Government Code chapter 52 apply to individual court reporters who are certified or required to be certified by the Board, not to court reporting firms. Section 52.021(g) of the Government Code authorizes the Board to enforce the certification requirement "by seeking an injunction or by filing a complaint against a person who is not certified," *id.* § 52.021(g), and section 52.029 authorizes it to "revoke or suspend the shorthand reporter's certification or issue a reprimand to the reporter" for various causes set out in the statute. *Id.* § 52.029.

Subsection 52.021(i), however, does not require owners of a court reporting firm to be certified as court reporters. As introduced, the bill adopting subsection 52.021(i) would have prohibited a person from engaging in shorthand reporting as an employee of a court reporting firm unless "a person or persons certified as shorthand reporters by the supreme court are partners, shareholders, or owners with an individual or aggregate ownership interest of at least 51 percent of the firm." Tex. S.B. 646, 75th Leg., R.S. (1997) (as introduced); *see* SEN. JURISPRUDENCE COMM., BILL ANALYSIS, Tex. S.B. 646, 75th Leg., R.S. (1997). The proposed requirement was deleted from the bill and replaced by subsection 52.021(i). *See* Tex. Comm. Substitute S.B. 646, 75th Leg., R.S. (1997); S.J. OF TEX., 75th Leg., R.S. 1116 (1997). Subsection 52.021(i) does not require owners or shareholders of a court reporting firm to be certified court reporters. Accordingly, the Board may not use its injunctive or disciplinary power under chapter 52 to enforce rules against a court reporting firm.

Subsection 52.021(i) does provide that the Board may "enforce this subsection by assessing a reasonable fee against a court reporting firm." TEX. GOV'T CODE ANN. § 52.021(i) (Vernon 1998). This provision might be read to refer to a fee collected from regulated entities to recover some of the costs of regulation or to a fine or penalty to be assessed against a court reporting firm found to have violated a rule. We read subsection 52.021(i) as authorizing a fee to recoup costs of administering the provisions relating to court reporting firms and not as a penalty. Statutes that impose penalties must be sufficiently definite so that those subject to their provisions may know with reasonable certainty what they mean and who is liable to punishment for their infraction. *See Eubanks v. State*, 203 S.W.2d 339, 340-41 (Tex. Civ. App.–Austin 1947, writ ref'd). A statute that is penal in nature must be strictly construed. *See Tenneco Oil Co. v. Padre Drilling Co., Inc.*, 453 S.W.2d 814 (Tex. 1970) (statute authorizing recovery of attorney's fees must be strictly construed). Subsection 52.021(i) does not put court reporting firms on notice that they might be subject to a fine or penalty for violating a rule of the Board, and we may not construe it broadly to provide an enforcement mechanism for the Board. The Board may set a reasonable fee to be collected from court reporting firms to recover costs of administering the rules applicable to the firms.

In sum, it is our opinion that the legislature did not provide a method for the Board to enforce its rules against a court reporting firm. The Board's remedy is to seek legislation giving it that authority. If the Board seeks enforcement legislation, it may also wish to seek legislative clarification of the provision that "[r]ules applicable to a court reporter are also applicable to a court reporting firm." TEX. GOV'T CODE ANN. § 52.021(i) (Vernon 1998). Many of the rules "applicable to a court reporter," are relevant only to natural persons and cannot be applied to court reporting firms. *See* Standards and Rules, *supra*, 543-53, §§ I. E. (renewal of certification); III. (examination requirements for certification as court reporter); V. (application procedures); VIII. (notification of exam results and regrading); IX. (re-application to take exam). Subsection 52.021(i) does not state how the rules are to be applied to court reporting firms, but we may look at the legislative history of this provision for assistance in understanding it. *See* TEX. GOV'T CODE ANN. § 311.023(1)-(3) (Vernon 1998) (in construing a statute, courts will consider the object sought to be attained and the legislative history); *San Antonio Gen. Drivers, Local No. 657 v. Thornton*, 299 S.W.2d 911, 914-15 (Tex. 1957) (when statute is ambiguous, court may turn to legislative history).

The legislative history of section 52.021(i) shows that the legislature intended the rules defining unprofessional conduct to apply to court reporting firms. *See* Standards and Rules, *supra*, 547, § IV. B. The bill analysis for Senate Bill 646 states that the purpose of the bill was to require *court reporting firms to comply with the standards of conduct and professionalism applicable to certified court reporters.* TEX. SEN. JURISPRUDENCE COMM., BILL ANALYSIS, Tex. Comm. Substitute S.B. 646, 75th Leg., R.S. (1997). Witnesses in the committee hearing on Senate Bill 646 spoke of the bill as subjecting the court reporting firms to rules on ethical standards and professional conduct applicable to court reporters. *See Hearings on Tex. Comm. Substitute S.B. 646 Before the Sen. Jurisprudence Comm.*, 75th Leg., R.S. (Apr. 14, 1997) (tape recording available from Senate Staff Services Office) (statements by Senator Brown, David B. Jackson of United American Reporting Services, and Ginny McCluskey, President of Texas Court Reporters Association). *See also*

*Hearings on Tex. S.B. 647 Before the Sen. Jurisprudence Comm.*, 75th Leg., R.S. (Apr. 14, 1997) (tape recording available from Senate Staff Services Office) (testimony of Ginny McCluskey).

Section 52.021(i) of the Government Code could be read as subjecting court reporting firms to the standards and rules on unprofessional conduct set out in section IV. B. of the Standards and Rules. While this body of rules does not expressly refer to court reporting firms, many of the rules can be applied to such firms. For instance, "unprofessional conduct" is defined to include "advertising or representing falsely the qualifications of a certified shorthand reporter" and "failing to charge all parties or their attorneys to an action the same price for an original transcript or statement of facts." *Standards and Rules, supra*, 547, § IV. B. (5), (6). These rules on advertising and charges are relevant to the conduct of a court reporting firm. Another rule would prevent a court reporting firm from "giving directly or indirectly, benefitting from or being employed as a result of any gift, incentive, reward, or anything of value to attorneys, clients, or their representatives or agents," except for the nominal items described in the rule. *Id.* § IV. B. (12). Some of the rules appear to address only the conduct of the individual court reporter. *Id.* § IV. B. (2) (prohibition on producing an inaccurate transcript or statement of facts), (11) (prohibition on going off the record during a deposition absent agreement of the parties or their attorneys). These rules, however, might be construed to prohibit a firm from requiring the court reporter to violate the rule.

The Texas Supreme Court could exercise its rule-making authority consistent with due process to identify the rules applicable to court reporting firms. *See* TEX. GOV'T CODE ANN. § 52.002 (Vernon 1998) (supreme court may adopt rules consistent with this chapter). In addition, as we have already stated, the Board could seek legislative clarification of section 52.021(i) of the Government Code in its entirety. Individual court reporters, including court reporters employed by a court reporting firm, remain subject to the provisions of the statute and the rules governing the conduct of court reporters. The Board has authority to impose sanctions on individual court reporters for failing to comply with these provisions.

## S U M M A R Y

Subsection 52.021(h) of the Government Code, which requires court reporting firms to register with the Court Reporters Certification Board by completing an application in a form adopted by the Board, does not authorize the Board to establish or evaluate qualifications of a court reporting firm. A court reporting firm needs only to complete an application in a form approved by the Board to register pursuant to subsection 52.021(h).

The legislature intended subsection 52.021(i) of the Government Code, which provides that rules applicable to a court reporter are also applicable to a court reporting firm, to subject court reporting firms to rules on unprofessional conduct set out in section IV. B. of the "Standards and Rules for Certification of Certified Shorthand Reporters." *See* Standards and Rules, *supra*, 547, § IV. B. However, the legislature did not authorize the Board to impose sanctions on court reporting firms that fail to comply with the rules.

Individual court reporters, including court reporters employed by a court reporting firm, are subject to the provisions of the statute and rules governing the conduct of court reporters. The Board has authority to impose sanctions on the court reporters for violating these provisions.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee